UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRENCE O'DONNELL,

      Plaintiff,

v.                         CASE No. 8:13-CV-2958-T-33TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, I recommend that the decision be affirmed.

I.

The plaintiff, who was fifty-three years old at the time of the administrative decision and who has a tenth grade education, has worked

_____

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

primarily as a dishwasher prep/cook (Tr. 35). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to lung problems and shortness of breath (Tr. 175). The claims were denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of tremors, hepatitis, chronic obstructive pulmonary disease (COPD), streptococcus viridans empyema, left-sided thoracotomy with debridement and partial pleurectomy (Tr. 19). He concluded that these impairments limited the plaintiff (Tr. 21):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: After standing for 30 minutes, the claimant should have the option to sit for two minutes and/or work from a seated position. The claimant can frequently climb, balance, stoop, kneel, crouch and crawl but should avoid ladders, ropes and scaffolds. He can perform frequent but not continuous fine finger movements. The claimant should avoid even moderate exposure to pulmonary irritants. He should avoid concentrated exposure to hazards, humidity and temperature extremes. The claimant is limited to unskilled work.

The law judge determined that these limitations prevented the plaintiff from performing past work (Tr. 23). However, based upon the testimony of a vocational expert, the law judge found that jobs existed in significant numbers in the national economy that the plaintiff could perform, such as inspector, office helper, and machine tender (Tr. 24). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 25). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

-3-

clinical and laboratory diagnostic techniques."   42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on four grounds: (1) The credibility decision is not based on substantial evidence; (2) the residual functional capacity assessment is not supported by substantial evidence; (3) the rejection of the statements by the plaintiff's wife is not supported by substantial evidence; and (4) the hypothetical question to the vocational expert is not supported by substantial evidence (Doc. 17, p. 1). None of these contentions has merit.

A.  The plaintiff asserts first that the law judge's credibility determination was not based on substantial evidence.  The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony."  Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard.  The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security

rulings (Tr. 21). Moreover, he set out the appropriate standard (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not wholly discount the plaintiff's complaints of pain. After considering the plaintiff's testimony, along with the objective medical evidence, the law judge restricted the plaintiff to light work activity with postural, manipulative, and environmental limitations (Tr. 21). In this respect, the law judge fairly summarized the pertinent evidence as follows (Tr. 21-22):

> The claimant is diagnosed with tremors and is prescribed Primidone for this condition (Ex. 7F/3, Ex. 9F/3,18). The medical evidence states the claimant's tremors have been progressive over the years. However, he has not exhibited any symptoms of rigidity or difficulty with balance. Nor is there any change in his pattern of speech. The claimant exhibits a normal gait with no signs of shuffling or loss of associated limb movement (Ex. 10F/3). The claimant has a heavy caffeine ingestion of up to three pots of coffee per day. On March 12, 2012, he was cautioned that caffeine increases the effect of the tremors. It was recommended that he decrease his coffee intake (Ex. 9F/5). Despite the tremors diagnosis, the claimant exhibited 5/5 muscle strength in the upper and lower extremities during a consultative

examination (Ex. 7F). Furthermore, his hand and finger dexterity was intact. The claimant's grip strength was 5/5 bilaterally (7F/3). The residual functional capacity (RFC) conclusion reached herein accommodates the limitations imposed by the claimant's propensity for tremors by limit[ing] him to frequent but not continuous fine fingering movements.

The claimant has a history of hepatitis b and hepatitis c (Ex. 9F/15, 17). At the hearing, he testified that he received a letter notifying him of this condition after he attempted to donate blood. The claimant testified that he has not sought any hepatitis related treatment. The claimant testified to fatigue, which reasonably may be expected from his hepatitis, but the record does not document fatigue that would prevent light exertion, as specified in the RFC reached herein. In fact, the claimant is currently engaged in part-time work classified at a medium exertional level. Furthermore, the RFC restricts the claimant to unskilled work to accommodate his propensity for fatigue.

The claimant has a history of respiratory ailments. In June 2010, pulmonary nodules were observed on his lungs but a pet scan was negative for cancer. On July 29, 2010, the claimant was admitted to the emergency room after complaints of shortness of breath and fevers (Ex. 14F/9). He was found to have a large right-sided empyema. As a result, the claimant underwent a thoracotomy with debridement and partial pleurectomy (Ex. 14F/3, 17). On August 3, 2010, surgical findings were

consistent with streptococcus viridans empyema. On August 8, 2010, the claimant was described as making good progress post-surgery. Subsequently, he was discharged on August 10, 2010 (Ex. 14F).

As for the alleged chronic obstructive pulmonary disease, pulmonary function testing on July 21, 2011, revealed the claimant has only mild lung obstruction (Ex. 5F). Consultative examiner, Dr. Robert Shefsky, M.D., examined the claimant on October 21, 2011. Dr. Shefsky noted the claimant had decreased breath sounds on auscultation. However, Dr. Shefsky stated the claimant's percussion was normal, his diaphragmatic motion was normal and no significant chest wall abnormalities observed. Furthermore, on February 3, 2012, the claimant's chest x-rays showed only mild left basilar pleural thickening (Ex. 10F/2). The evidence reflects the claimant has a history of chronic smoking and extensive tobacco use (Ex. 7F/1, Ex. 9F/4, Ex. 11F/3, 4, Ex. 14F/15). The claimant smoked at least a pack of cigarettes a day for 40 years (Ex. 14F/44, 48). He continued to smoke cigarettes despite the COPD diagnosis (Ex. 7F/1, Ex. 11F/3, 4, Ex. 9F/4, Ex. 14F/4, 15). The RFC accommodates the COPD impairment by prohibiting even moderate exposure to pulmonary irritants and avoiding the aforementioned environmental limitations. Furthermore, the claimant testified that he feels light headed and dizzy after using a ventolin inhaler. The RFC encompasses this limitation by restricting the claimant from using ladders, ropes, and scaffolds.

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Specifically, the law judge stated (Tr. 22-23):

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. Although the hearing is just a snapshot of the entire mosaic, the claimant did not appear to be in any observable distress. The claimant alleges that he has difficulty with memory loss. However, he presented as articulate and had good memory recall. Despite having lung surgery in 2010, the claimant continued to smoke cigarettes and cigars daily (Ex. 7F/1). At the hearing, the claimant testified that he continues to smoke cigarettes. These acts are inconsistent with an assertion that this claimant is in disabling physical pain from a lung condition. The claimant testified that he works part time as a delivery person clerk at a small café. Although this is part time work and below the level of substantial gainful activity, it suggests a greater exertional capacity than that alleged by the claimant. The vocational expert testified that the claimant's current part-time work is performed at a medium exertional level. In addition to working, the claimant can cook light meals and go shopping (Ex. 6E). The claimant's activities of daily living in combination with his

> current part-time work support the conclusion that
> he is capable of performing light exertional level
> work. Thus, the claimant's allegations concerning
> his functional limitations are not fully credible
> because they are not consistent with the capacity he
> demonstrated when working.

This explanation is sufficient to discount the plaintiff's subjective complaints.

See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx.

693, 699 (11th Cir. 2006).

The plaintiff quibbles with the factors that the law judge considered in discounting the plaintiff's subjective complaints. This argument ignores the principle that review of administrative findings, including credibility determinations, under the substantial evidence test is highly deferential. Adefemi v. Ashcroft, supra, 386 F.3d at 1026-27. That principle applies, of course, to Social Security cases. Buttram v. Social Security Administration, Commissioner, ___ Fed. Appx. ___, 2014 WL 6676987 at *3 (11th Cir. 2014). Accordingly, it is not sufficient for the plaintiff to show that substance evidence supports a finding that the plaintiff is fully credible, but rather he must show that the evidence compels such a finding. In this case, the plaintiff has not even made the lessor showing.

The plaintiff's initial contention on this issue is that the law judge erred in assessing the plaintiff's complaint of fatigue. The law judge considered this complaint and accommodated it by limiting the plaintiff to unskilled work at the light exertional level (Tr. 22). The law judge stated that "the record does not document fatigue that would prevent light exertion" (id.). The plaintiff has not cited anything in the record that calls this statement into question (see Doc. 17, pp. 12-13).

The plaintiff next complains about the law judge's comment that the plaintiff's smoking is inconsistent with an assertion that the plaintiff is in disabling pain from a lung condition. In the first place, the plaintiff did not testify to any pain from a lung condition, disabling or otherwise (see Tr. 36-41). Furthermore, if the plaintiff had asserted disabling pain from a lung condition, the law judge could reasonably think that a failure to attempt to stop smoking was inconsistent with that assertion. Notably, the medical records show that on September 28, 2012, the plaintiff declined a referral for smoking cessation (Tr. 337).

The plaintiff also objects to the law judge's observations of the plaintiff at the hearing. However, the law judge is not prohibited "from

-12-

considering the claimant's appearance and demeanor during the hearing," as long as he does "not reject the subjective medical evidence and claimant's testimony solely upon his observation during the hearing." Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985). Here, the law judge simply commented, "[a]lthough the hearing is just a snapshot of the entire mosaic, the claimant did not appear to be in any observable distress" (Tr. 22). That comment was reasonable and appropriate.

The plaintiff complains further about the law judge's consideration of the plaintiff's part-time work delivering lunches. The pay stubs in the record indicate that the plaintiff works more or less about twenty hours per week in this activity (Tr. 345-54). The law judge, while recognizing that it was part-time work, stated that "it suggests a greater exertional capacity than alleged by the claimant" (Tr. 23), which allegations included an ability to walk only a block or two at the most, and an ability to stand for twenty to thirty minutes at the most (Tr. 37). The law judge could reasonably conclude that the plaintiff's part-time job supports a conclusion that the plaintiff could engage in light work.

-13-

The plaintiff on this contention disagrees with the vocational expert's testimony that the part-time job involved medium exertional work. However, as the Commissioner points out, plaintiff's counsel is not a vocational expert and cannot testify to the exertional level of the plaintiff's job (Doc. 18, p. 9). Accordingly, the law judge could plainly accept the expert's testimony that the plaintiff's work was at the medium level. Regardless, the law judge did not rely on the expert's testimony in determining the plaintiff's residual functional capacity, since he limited the plaintiff to a range of light work.

The plaintiff complains about the law judge's consideration of his activities of daily living. However, it is clearly proper for the law judge to consider such activities in assessing the plaintiff's credibility. Macia v. Bowen, 829 F.2d 1009, 1011-12 (11th Cir. 1987); Couch v. Astrue, 267 Fed. Appx. 853, 856 (11th Cir. 2008). In fact, the regulations provide that daily activities are to be considered in determining the credibility of the plaintiff's subjective complaints. 20 C.F.R. 404.1529(c)(3)(i), 20 C.F.R. 416.929(c)(3)(i).

Here, the law judge stated that, "[i]n addition to working, the claimant can cook light meals and go shopping" (Tr. 23). The record indicates other activities as well (Tr. 203-04, 208). Significantly, a treatment note of July 25, 2011, indicated that the plaintiff exercises four or more times per week by walking or riding a bike (Tr. 287). Accordingly, the law judge could reasonably find that "[t]he claimant's activities of daily living in combination with his current part-time work support the conclusion that he is capable of performing light exertional level work" (Tr. 23).

For these reasons, the plaintiff's challenge to the law judge's credibility determination fails. The law judge reasonably and adequately explained that determination. The plaintiff has certainly not shown that the evidence compels the conclusion that he is fully credible.

B. The plaintiff contends, second, that the law judge's residual functional capacity assessment is not supported by substantial evidence. This contention is baseless.

Importantly, there is no opinion from any doctor stating functional limitations greater than those found by the law judge. In fact, there is no opinion from any treating or examining doctor.

There is an opinion from a non-examining reviewing physician, Dr. Paul Berger (Tr. 71-73). Dr. Berger opined that the plaintiff was limited to light work with additional postural and environmental limitations. The law judge gave Dr. Berger's opinion of the ability to perform light work significant weight because it "is supported by the objective medical evidence and consistent with the claimant's documented ability to work at a job that requires a greater physical exertional level" (Tr. 23). Notably, the law judge did not give controlling or great weight to that opinion. Moreover, the law judge found additional and greater restrictions than opined by Dr. Berger (compare Tr. 21 and Tr. 71-73).

The plaintiff asserts that "it is apparent that Dr. Berger's opinion is outdated as he did not have the opportunity to review key medical evidence which the ALJ himself obviously relied on in determining Mr. O'Donnell's long list of severe impairments" (Doc. 17, p. 19). However, it was not unreasonable for the law judge to give Dr. Berger's opinion some weight since, as the plaintiff acknowledges, the law judge considered the additional evidence. That is particularly so in light of the absence of an opinion from any other doctor concerning the plaintiff's functional limitations.

-16-

In the effort to challenge the law judge's residual functional capacity determination, the plaintiff points out that the plaintiff has tremors and the removal of a part of his left lung (id., p. 25). The law judge considered those impairments and found them to be severe (Tr. 19). Moreover, as reflected in the portion of the law judge's decision quoted above, the law judge imposed functional limitations to accommodate the impairments (Tr. 21, 22). As indicated, there is no statement in the record from a doctor opining greater limitations from these conditions.

Furthermore, the plaintiff cannot demonstrate a deficiency in the residual functional capacity determination by merely referring to medical diagnoses. Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

The plaintiff, in challenging the residual functional capacity determination, also seeks to rely on his own testimony (Doc. 17, pp. 22-23). However, as previously shown, the law judge discounted the plaintiff's testimony, and that credibility finding was reasonable and adequately explained.

For these reasons, the plaintiff's challenge to the residual functional capacity determination fails. The plaintiff has certainly not pointed to evidence in the record which compels a finding of greater functional limitations.

C. The plaintiff's third issue is that the law judge erred in discounting statements made by the plaintiff's wife. This contention also lacks merit.

The plaintiff's wife was present at the hearing, but did not testify (Tr. 32). She had, however, previously submitted a brief affidavit (Tr. 342-43). That affidavit essentially iterated the plaintiff's testimony. As the Commissioner correctly points out, under that circumstance the law judge would not err if he did not specifically address the wife's statement (Doc. 18, p. 14). "Even if the ALJ fails to make an explicit credibility determination as

to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." Osborn v. Barnhart, 194 Fed. Appx. 654, 666 (11th Cir. 2006); see also Clyburn v. Commissioner, Social Security Administration, 555 Fed. Appx. 892, 894-95 (11th Cir. 2014).

In this case, however, the law judge did expressly consider the wife's statement (Tr. 23). The law judge stated that he gave the wife's "opinion limited weight, in that it was based solely on the claimant's subjective complaints" (id.). Particularly since the law judge reasonably discounted the plaintiff's subjective complaints, he could similarly discount the wife's statement.

D. Finally, the plaintiff makes the superfluous argument that the hypothetical question to the vocational expert was deficient. In order to prevail on this contention, the plaintiff would have to be successful on the challenge to the residual functional capacity determination. Because the plaintiff's challenge to that determination, as well as his challenge to the credibility finding, failed, the challenge to the hypothetical question also fails.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, supra, 284 F.3d at 1227. However, the law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004). In other words, the operative hypothetical question must contain the individual's vocational profile, including particularly his residual functional capacity, as determined by the law judge.

The law judge's finding of the plaintiff's residual functional capacity matches the hypothetical question asked of the vocational expert (compare Tr. 21 with Tr. 42-44). As the Commissioner points out, the plaintiff does not argue otherwise. Accordingly, the hypothetical question is not deficient.

IV.

For these reasons, the decision of the Commissioner is supported

by substantial evidence and does not contain reversible error.  I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: DECEMBER _12_, 2014

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).